MASXP-20110425

leakes

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

05/01/2013
10:19 AM

## SUCV2013-00329
### Sindi v El-Moslimany et al

| | | | | |
|---|---|---|---|---|
| **File Date** | 01/25/2013 | **Status** | Disposed: transferred to other court (dtrans) | |
| **Status Date** | 05/01/2013 | **Session** | A - Civil A, 3 Pemberton Sq, Boston | |
| **Origin** | 1 - Complaint | **Case Type** | B15 - Defamation/libel/slander | |
| **Track** | A - Average track | **Lead Case** | | |
| | | | **Jury Trial** | Yes |

### DEADLINES

| | Service | Answer | Rule12/19/20 | Rule 15 | Discovery | Rule 56 | Final PTC | Judgment |
|---|---|---|---|---|---|---|---|---|
| **Served By** | | | 05/25/2013 | 03/21/2014 | 01/15/2015 | 02/14/2015 | | |
| **Filed By** | 04/25/2013 | 05/25/2013 | 06/24/2013 | 04/20/2014 | | 03/16/2015 | | 01/10/2016 |
| **Heard By** | | | 07/24/2013 | 04/20/2014 | | | 07/14/2015 | |

### PARTIES

**Plaintiff**
Hayat Sindi
Active 01/25/2013

**Private Counsel 634275**
David H Rich
Todd & Weld
28 State Street
31st Floor
Boston, MA 02109
Phone: 617-720-2626
Fax: 617-227-5777
Active 01/25/2013 Notify

**Private Counsel 679795**
Michael Thad Allen
Todd & Weld
28 State Street
31st floor
Boston, MA 02109
Phone: 617-720-2626
Fax: 617-227-5777
Active 01/25/2013 Notify

**Defendant**
Samia El-Moslimany
Served: 01/29/2013
Served (answr pending) 02/21/2013

**Private Counsel 645752**
George R White
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-342-4805
Active 05/01/2013 Notify

**Private Counsel 450780**
Mark R. Segalini
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-439-7590
Active 05/01/2013 Notify

MASXP-20110425
leakes

Commonwealth of Massachusetts
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

05/01/2013
10:19 AM

## SUCV2013-00329
## Sindi v El-Moslimany et al

**Defendant**
Ann El-Moslimany
Served: 01/29/2013
Served (answr pending) 02/21/2013

Private Counsel 645752
George R White
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-342-4805
Active 05/01/2013 Notify

Private Counsel 450780
Mark R. Segalini
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-439-7590
Active 05/01/2013 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 01/25/2013 | 1.0 | Complaint & Jury Demand on all Issues |
| 01/25/2013 | | Origin 1, Type B15, Track A. |
| 01/25/2013 | 2.0 | Civil action cover sheet filed($10,000,000.00) |
| 02/21/2013 | 3.0 | SERVICE RETURNED: Defts (certified mail/UPS) |
| 02/21/2013 | 4.0 | SERVICE RETURNED (summons): Samia El-Moslimany, service made on 1/25/2013 ( UPS & Yahoo) |
| 02/21/2013 | 5.0 | SERVICE RETURNED (summons): Ann El-Moslimany, service made on 1/25/2013 (UPS & Yahoo) |
| 03/06/2013 | 6.0 | Plaintiff Samia El-Moslimany's Request for entry of Default Under Mass R.Civ.P.55(A) |
| 03/19/2013 | | Defendants Samia El-Moslimany, Ann El-Moslimany's Notice of intent to file motion to dismiss complaint pursuant to Rule 9A(b)(2) on or before 3/27/13 |
| 04/02/2013 | 7.0 | Plaintiff Hayat Sindi's MOTION for appointment of special process server ABC Legal 633 filed & ALLOWED on 4/2/13 (Paul Troy, Justice) |
| 04/05/2013 | 8.0 | Plaintiff Hayat Sindi's MOTION for declaration of effective service and order of default (w/o opposition) |
| 04/24/2013 | 9.0 | Default (55a) as to defendant(s) Samia El-Moslimany, Ann El-Moslimany. Copies mailed 4/26/2013 |
| 04/25/2013 | | Motion (P#8) After review and consideration of motion and facts, ALLOWED. Assessment of Damages hearing to be scheduled, Plaintiff to notice Defendant of same. (Frison, J) Dated 4/16/13 Notice sent 4/25/13 |
| 04/29/2013 | | Certified Copy of Petition for Removal to US Dist Court of defendants (US Dist # 13-cv-10798-GAO) |
| 05/01/2013 | | Case REMOVED this date to US District Court of Massachusetts |

I HEREBY ATTEST AND CERTIFY ON
May 13, 2013 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:
Asst. Clerk

### EVENTS

MASXP-20110425

leakes

05/01/2013
10:19 AM

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

### SUCV2013-00329
### Sindi v El-Moslimany et al

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
CIVIL ACTION NO: 2013-00329-A

*U.S. DIS #*
*13-CV-10798-GAO*

| | |
|---|---|
| HAYAT SINDI, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SAMIA EL-MOSLIMANY and | ) |
| ANN EL-MOSLIMANY, | ) |
| Defendants. | ) |
| | ) |

## NOTICE OF FILING NOTICE OF REMOVAL

The defendants, Samia El-Moslimany and Ann El-Moslimany, hereby give notice that on April 8, 2013, they served and filed a Notice of Removal with the Untied States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1441(b).   A certified copy of the Defendants' Notice of Removal is attached hereto.

PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446, the filing of this Notice of Filing of Notice of Removal removes this action to the Federal Court, and this Court may "proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d).

1354362v1

THE DEFENDANTS,
SAMIA EL-MOSLIMANY and
ANN EL-MOSLIMANY,
By their attorneys,
MORRISON MAHONEY LLP

I HEREBY ATTEST AND CERTIFY ON

_May 13, 2013_ THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY _____
Asst. Clerk

_____
Mark R. Segalini, BBO No.:  450780
George R. White BBO# 645752
250 Summer Street
Boston, MA  02210
(617) 439-7500
msegalini@morrisonmahoney.com
grwhite@morrisonmahoney.com
Date: 4\29\13

2

1354362v1

## CERTIFICATE OF SERVICE

I, George R. White, attorney for the defendants, Samia El-Moslimany and Ann El-Moslimany, hereby certify that I have this day served the foregoing NOTICE OF FILING NOTICE OF REMOVAL to all counsel of record in this action by mailing same, by first class mail, postage prepaid to:

Michael Thad Allen, Esquire
Todd & Weld LLP
28 State Street
Boston, Massachusetts 02109

Dated: ___4/29/13___     Attorney: _____
                                    George R. White

1354362v1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

HAYAT SINDI,                )
                            )
Plaintiff,                  )
                            )
v.                          )
                            )
SAMIA EL-MOSLIMANY and      )
ANN EL-MOSLIMANY,           )
                            )
Defendants.                 )
                            )

N I hereby certify on 4/25/13 that the
foregoing document is true and correct copy of the
☐ electronic docket in the captioned case
☑ electronically filed original filed on 4/8/13
☐ original filed in my office on _____
Robert M. Farrell
Acting Clerk, U.S. District Court
District of Massachusetts
By: _Chris Danioh_
Deputy Clerk

### NOTICE OF REMOVAL BY THE DEFENDANTS,
### SAMIA EL-MOSLIMANY AND ANN EL-MOSLIMANY

To:     Judges of the United States District Court for the District of Massachusetts:

The defendants, Samia El-Moslimany and Ann El-Moslimany, by their undersigned attorneys, hereby gives notice of their removal of this action, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 & 1446, to the United States District Court for the District of Massachusetts.  As grounds for removal, Defendants state as follows:

### NATURE OF THE ACTION

1.      The plaintiff, Hayat Sindi, filed the initial complaint in this action on January 25, 2013 in the Superior Court for the Commonwealth of Massachusetts, Suffolk County.

2.      Defendant Samia El-Moslimany has not yet been was served with the Summons and Complaint.

3.      Defendant Ann El-Moslimany has not yet been served with the Summons and Complaint.

4.      As alleged in the Complaint, Plaintiff seeks substantial money damages from Defendants claimed knowing, intentional, and malicious campaign of defamation.  (Compl. ¶ 1.)

5.      Plaintiffs assert claims against Defendants for "Defamation, Libel, and Slander" (id., Count I), "Tortious Interference with Contractual Relationships" (id., Count II), "Tortious

1354360v1

Interference with Prospective Business Relationships" (*id.*, Count III), "Intentional Infliction of Emotional Distress" (*id.*, Count IV), and "Permanent Injunction" (*id.*, Count V).

## AMOUNT IN CONTROVERSY

6.     It is apparent from the face of the Complaint and attachments thereto that the amount in controversy, exclusive of interest and costs, in this action presently exceeds $75,000.

7.     Plaintiff alleges that her damages total $10,000,000.00.   In addition, Plaintiff seeks "her reasonable attorney's fees and costs".  (*Id.* Prayer for Relief and Jury Demand).[1]

## PARTIES AND DIVERSITY OF CITIZENSHIP

8.     As alleged in the Complaint, at the time this action was filed and at all times since, Plaintiff was and is a resident of the Commonwealth of Massachusetts.  (Compl. ¶ 2.)

9.     As alleged in the Complaint, at the time this lawsuit was filed and at all times since, both defendant were and are residents of the state of Washington.  (*See id.* ¶¶ 3 and 4.)

10.     Accordingly, there exists complete diversity of citizenship between Plaintiffs and State Farm pursuant to 28 U.S.C. § 1332.

## REMOVAL PROCEDURES

11.     Defendants Samia El-Moslimany and Ann El-Moslimany have not yet been served with the Summons and Complaint.  Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of first service on Defendants of the Plaintiff's Complaint.  There is no prohibition on filing a Notice of Removal before service of process has been made.

12.     Pursuant to Local Rule 81.1(a), Defendants shall request of the Clerk of the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts in and for the County of Suffolk certified or attested copies of all records, proceedings and docket entries

---

[1]     Defendants do not concede that the Plaintiff would be entitled to any of the relief sought in the Complaint.  Nor do they agree that the underlying claims upon which Plaintiff's causes of action are based may be appropriately asserted in this action.

1354360v1

therein and shall file same with the Court within twenty-eight (28) days after filing this Notice of Removal.

13.     A copy of this Notice of Removal is being filed with the clerk of the Superior Court for the Commonwealth of Massachusetts, Suffolk County, as provided by law.  Written notice of removal is also being given to Plaintiff.

14.     Defendants reserve the right to amend or supplement this Notice of Removal.

15.     If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present a brief and request oral argument in support of removal.

Dated: April 8, 2013.

THE DEFENDANTS,
SAMIA EL-MOSLIMANY and
ANN EL-MOSLIMANY,
By their attorneys,
MORRISON MAHONEY LLP


*/s/ George R. White*
Mark R. Segalini, BBO No.:   450780
George R. White BBO# 645752
250 Summer Street
Boston, MA  02210
(617) 439-7500
msegalini@morrisonmahoney.com
grwhite@morrisonmahoney.com


## CERTIFICATE OF SERVICE

I hereby certify that, this 8th day of April, 2013, I have electronically filed a copy of the above and foregoing with Clerk of the Court using the ECF system which sent notification of such filing to counsel of record.

/s/ George R. White
George R. White, BBO No. 645752

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT**

| | |
|---|---|
| HAYAT SINDI, | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| SAMIA EL-MOSLIMANY and | ) |
| ANN EL-MOSLIMANY, | ) |
| | ) |
|     **Defendants.** | ) |

13-0329 A

Civil Action No._____

MICHAEL JOSEPH DONE
CLERK/MAGISTRATE

2013 JAN 25  PM 1:57

### COMPLAINT AND JURY DEMAND

### i. Introduction

1.  By and through this action, Plaintiff Hayat Sindi seeks substantial money damages

arising from Defendants, Samia El-Moslimany's and her mother, Ann El-Moslimany's

knowing, intentional, and malicious campaign of defamation.  Beginning in or around

September 2011 and continuing through today, Defendants have engaged in a relentless

course of conduct designed and intended to publicly embarrass, humiliate, and destroy

Plaintiff through the perpetuation of intentional falsehoods.  This conduct has been

undertaken in writing, orally, and over the Internet and, at its core, seeks to exact revenge

for some perceived wrong committed by Plaintiff against Samia El-Moslimany which, in

actuality, never happened.  Defendants have sought to tarnish Plaintiff's reputation and

publicly humiliate her by, among other things, falsely accusing Plaintiff of engaging in

fraud, misrepresenting her professional credentials, engaging in illegal misconduct,

plagiarizing her scientific research and publications, and other libels which are

demonstrably false and defamatory per se.  In addition to seeking substantial money damages, Plaintiff seeks a permanent injunction against Defendants to prevent their ongoing, relentless and dangerous misconduct which, if not stopped, will lead to significant and irreparable consequences to Plaintiff.

### ii. The Parties

2.  Plaintiff Hayat Sindi ("Ms. Sindi") is a resident of 151 Tremont Street, Boston, Massachusetts.

3.  Defendant Samia El-Moslimany is a resident of 2655 SW 151st Place, Burien, Washington State.

4.  Defendant Ann El-Moslimany is a resident of 2107 NE 54th St., Seattle, Washington State.

### iii. Jurisdiction and Venue

5.  Jurisdiction is proper in this Court because Plaintiff Hayat Sindi is a resident of the forum and the damages at issue amount to more than $25,000.

6.  In addition, jurisdiction is proper under the Massachusetts Long Arm Statute as a substantial number of the acts and omissions that gave rise to this lawsuit took place in and around Massachusetts and caused tortious injury to Plaintiff in Massachusetts. Among other acts, Defendants personally traveled from Washington State to Boston, Massachusetts to slander and libel Plaintiff in her very neighborhood, as evidenced by Defendant Samia El-Moslimany's admissions on Facebook.

### iv. Facts

#### a. Hayat Sindi's Early Life and Achievements

7. Ms. Sindi is an accomplished scientist, entrepreneur, and philanthropist; she has founded or co-founded three businesses and/or non-profit companies; she has been distinguished by awards and honors from the British House of Commons, Cambridge University, the Massachusetts Institute of Technology, UNESCO, Harvard Business School, and the U.S.A. Science and Engineering Festival; and she is named as inventor or co-inventor on nine patents in the European Union, the United States, Canada, Japan, and China. The technology she has helped to invent and develop literally saves lives.

8. Ms. Sindi is also an individual who has persevered and succeeded throughout her career against all odds. At the time of her birth in Saudi Arabia in and around the ancient city of Mekkaa, only 2% of women could read and write, but Ms. Sindi, by virtue of her and her family's sacrifice, was able to go to school. Through her educational experience, Ms. Sindi not only learned to read and write in her native language but also studied English.

9. Ms. Sindi's early education was not the last time that she would beat all odds. As a girl, Ms. Sindi dreamed of someday becoming a great scientist, and she developed ambitions to study abroad, something virtually unheard of for a Saudi girl. She wanted to study pharmacology, but she could not study this subject in any of the Saudi Universities at that time. So she sat down with her father and mother to tell them that she wanted to study pharmacology in the United Kingdom. She had avidly read any and all materials she could find on universities in Great Britain and had decided she wanted to go to King's College of London and Cambridge University. At first, her father adamantly refused, fearing that his daughter would be vulnerable and alone. Ms. Sindi told him that she

knew that the British universities would accept her because she was a good student, and eventually this won him over. Her parents agreed to allow her to go.

10. In 1990, Ms. Sindi arrived in London, United Kingdom. At that time, she did not know she had to take the A-Level Exams to qualify her to enter any British university. She had no personal experience with Great Britain's rigid hierarchy of education, but she learned quickly, the hard way. At first her English skills did not yet suffice for study in Great Britain, let alone at King's College or Cambridge, and she was rejected, but she refused to quit or return home. She studied on her own, improved her English, and was eventually admitted to King's College of London in 1991, where she earned a Bachelor of Science Degree with honor in 1995. Exhibit 1.

11. This was the springboard for entry into Cambridge University in 1995, where Ms. Sindi earned a Ph.D. in Biotechnology in 2001 (see Exhibit 2), making her the first Saudi Arabian woman to attain such a degree. Although she had been turned down by Oxford when she first landed in Great Britain, she earned a certificate in Molecular Medicine from Oxford while she was a Cambridge doctoral student in 1999. Exhibit 3. After her graduation, she received a prestigious visiting scholar position at Harvard University in the laboratory of Professor George Whitesides, and continued her work within Professor Whitesides' prestigious laboratory thereafter.

12. Ms. Sindi has dedicated her life's work and her science to the service of society. Not content to remain solely in the academic laboratory, she has always been determined to place her knowledge at the disposal of the disadvantaged in underdeveloped parts of the world. Her second company is a non-governmental organization, Diagnostics for All, which developed a simple device the size of a thumbnail that can provide low-cost

4

diagnostic solutions for the rapid detection of liver, kidney, and metabolic diseases for doctors who must operate in locations without access to "first-world" medicine, hospitals, or laboratories.

13. Among other inventions to her credit, Ms. Sindi is listed as the inventor on a U.S. Patents held jointly with 10 others from Professor Whitesides' Harvard laboratory, dated December 3, 2009. Exhibit 4. She is the sole inventor of another patent in the United States dated June 22, 2010. Exhibit 5. And she has patented another device under the International Patent Cooperation Treaty with the World Intellectual Property Organization ("International Patent") and in Canada, dated September 22, 2003. Exhibit 6. She also is listed as the co-inventor on an International Patent published April 24, 2008. Exhibit 7.

14. Ms. Sindi founded Sonoptix Co, LLC, in the United Kingdom. In May 2012 Sonoptix conducted an Initial Public Offering of its units under the sponsorship of HAYKALAH Financial Advisory, based in Jeddah-Saudi Arabia and raised $20,000,000.

15. As noted above, Ms. Sindi is the co-founder of Diagnostics for All ("DFA"). A business plan for DFA co-authored by Ms. Sindi and five others won the Harvard Business School 12th Annual Business Plan Contest in April 2008. Exhibit 8. The same team won a similar M.I.T. competition for a prize of $100,000, and became the first team to win both competitions in the same year. In November 2012, the Bill & Melinda Gates Foundation awarded DFA a $2.6M grant to develop novel diagnostic tools for the assessment of immunity against tetanus and measles and to support vaccination efforts.

16. Ms. Sindi also founded, serves as C.E.O., and is the guiding force behind the i2 Institute for Imagination and Ingenuity ("i2 Institute"), launched in November 2012 in Jeddah,

Saudi Arabia. The i2 Institute is a non-profit organization that seeks to create an ecosystem of entrepreneurship and social innovation for scientists, technologists, and engineers in the Middle East. This year it will award a dozen aspiring inventors and entrepreneurs fellowships worth over $5,000,000 to encourage economic development in the Middle East.

**b. Samia El-Moslimany and Ann El-Moslimany's Campaign of Slander, Defamation, and Libel against Hayat Sindi**

17. Fouad Dehlawi ("Mr. Dehlawi") is an information-technology specialist, who now lives and works in Jeddah, Saudi Arabia and is a retired associate professor of the Department of Engineering of King Abdul Aziz University in Saudi Arabia. He now works as an Independent Computer & Network Security Professional Advisor. In 2010, Mr. Dehlawi was married to Samia El-Moslimany. Ann El-Moslimany is Samia's mother, Mr. Dehlawi's mother-in-law.

18. Ms. Sindi met Mr. Dehlawi in the course of their common professional endeavors. In November 2010, Ms. Sindi was a visiting scholar at Harvard University, and she was invited to visit his family in Seattle, Washington for the Thanksgiving holiday. Ms. Sindi spent the Thanksgiving holiday with Mr. Dehlawi and Samia El-Moslimany. She met Ann El-Moslimany at this time.

19. In the middle of January 2011, Mr. Dehlawi informed Ms. Sindi that he had been having marital problems and was planning on a divorce. Mr. Dehlawi expressed interest in Ms. Sindi, but the two never had a physical relationship. They continue to interact as professionals in various business and consulting endeavors for organizations of the Saudi government, among others.

20. Over the course of 2011, Samia El-Moslimany became enraged and jealous at the thought that her husband had a romantic engagement with Ms. Sindi.  Although Mr. Dehlawi and Ms. Sindi had never had a physical relationship, Samia El-Moslimany's erroneous conjecture about this launched her and her mother's relentless campaign of defamation.

21. Ms. El-Moslimany's tortious campaign began in September 2011 when she began sending Ms. Sindi insulting and aggressive emails..

22. On or around October 17, 2011, Ms. Sindi traveled to Camden, Maine to attend the PopTech Conference to announce the launch of the i2 Institute.  While there, she learned that Samia El-Moslimany had sent her son, Zakaria, to spy on his father and Ms. Sindi. The presence of Zakaria alone made Ms. Sindi anxious and apprehensive, although he did not speak to her directly at the PopTech Conference.

23. Abusive private emails directed to Ms. Sindi from Ms. El-Moslimany quickly escalated into repeated, published false and defamatory statements to third parties.  Samia El-Moslimany and her mother Ann El-Moslimany began to relentlessly pursue Ms. Sindi on the Internet as well as in person at conferences and events attended by Ms. Sindi.

24. Most recently, Samia and Ann El-Moslimany attacked Ms. Sindi with false and defamatory libel in the webpages of the *Washington Post* after reporter David Ignatius wrote an article featuring the life and achievements of Ms. Sindi on January 18, 2011, titled "Newfound status for Saudi women," *Washington Post*, Jan. 18, 2013, avail. at http://www.washingtonpost.com/opinions/david-ignatius-women-gain-newfound-stature-in-saudi-arabia/2013/01/18/9bb67c2e-610e-11e2-9940-6fc488f3fecd_story.html.

25. Using pseudonyms "Her fiancé's wife" and "Cambridge University researcher," Samia El-Moslimany again pursued her baseless, aggressive campaign of slander, defamation,

and libel in the "comment section" of the *Washington Post's* website, where she published malicious falsehoods below Mr. Ignatius' article.  The Defendants' defamatory postings direct contravened the *Washington Post's* rules for commenters (see http://www.washingtonpost.com/discussion-and-submission-guidelines/2011/11/21/gIQAuvIbiN_story.html).

26. As "Her fiancé's wife," Samia El-Moslimany posted the following statement: "I am not anonymous. My name is Samia El-Moslimany"; in other comments, she accused Ms. Sindi of an "aggressive assault on my family," and claims to "have collected hundreds of pages of documentation and support for everything that has been mentioned by others below."

27. The defamatory statements set forth by Samia and Ann El-Moslimany have become a stock litany of their malicious campaign to ruin Ms. Sindi's professional career and reputation.  These include, without limitation,

    i.    that Ms. Sindi bought and/or plagiarized her Cambridge degree rather than earned it ("Get a PhD is not hard of [sic.] you pay for it");

    ii.    that Ms. Sindi committed unspecified "unethical actions" in connection with her entrepreneurial and business enterprises;

    iii.    that Ms. Sindi is a "fraud" and "con artist";

    iv.    that "[i]t is a lie that Sindi set up two companies and helped run a third" because "[s]he set up Sonoptix in the UK which did research for 1 year before funding dried up and she failed to raise anymore money";

    v.    that Ms. Sinid is "lying" that she helped set up the company Nanoterra.

    vi.    that "[Ms.] Sindi plagarised [sic.] her PhD thesis.  Ask Adrian Stevenson who wrote it for her.  It was common knowledge in her research lab in Cambridge that she paid Adrian to do that. Adrian, by the way, never paid taxes for his 'services' to Sindi."

Samia El-Moslimany also urged the *Washington Post's* readers to "[s]peak to Professor Whitesides of Harvard, and ask about her [Ms. Sindi's] non-existent role in the founding of DFA [Diagnostics for All]." A true and accurate copy of the text of these comments, in the stream of commentary on the David Ignatius article is attached here as Exhibit 9.

28. Each of these statements is false and defamatory.

29. For example, Ms. Sindi has served as Vice Chairman of Nanoterra, a high-technology science and engineering firm.

30. By way of another example, one particularly outrageous statement accuses Ms. Sindi of having paid money to Dr. Adrian Stevenson, a Senior Researcher at Cambridge University, to write (unspecified) portions of her dissertation. Dr. Stevenson has made clear that this claim is outrageous and false, and that the believes Samia El-Moslimany's libel to be a "work of fiction." Dr. Stevenson denies having written Ms. Sindi's dissertation for her or receiving payment to do so.

31. Defendants' actions in the comment section of the *Washington Post* are merely the latest iterations of the El-Moslimany's campaign. On October 21, 2011, Abigail Pesta of the *Daily Beast* authored a feature article about Ms. Sindi titled "Rebel with a Cause" in the "Women in the World" section, which highlighted Ms. Sindi's career achievements and the launch of the i2 Institute. The *Daily Beast* is an American news reporting and opinion website founded and published by the former editor of *Vanity Fair* and *The New Yorker*. Ms. Pesta's article is located on the Internet at http://www.thedailybeast.com/articles/2011/10/21/women-in-the-world-saudi-innovator-hayat-sindi-s-science-breakthrough.html

32. In response to the *Daily Beast* article featuring Ms. Sindi's achievemetns, Samia and Ann El-Moslimany began to post numerous malicious and false statements in the "comment" section adjacent to the article. Their postings include, among other outrageous falsehoods, the assertion that Ms. Sindi was a "fake," a "hypocrite," an "egoistic personality," and a "disgrace." The El-Moslimany's falsely declared as fact that Ms. Sindi lied about her age in order to make herself seem younger than she is and that she was a woman "hiding the true nature of herself in the guise of religion," essentially accusing her of being a fraud. Samia El-Moslimany furthered this claim by stating as a fact that "she [Ms. Sindi] is not who she claims to be." Samia and Ann El-Moslimany hid behind the anonymity made possible by the Internet by assuming the pseudonyms "TruthSeeker," "Munafika," "Rooza," and "Tia."

33. Not only have the El-Moslimanys spread false and defamatory statements about Ms. Sindi, they have demonstrated that they will stop at nothing to perpetuate them through any media available to them. By way of example only, when the journalist Abigail Pesta and the website manager of the *Daily Beast* noticed that the anonymous postings of the El-Moslimany's were false and harassing, the *Daily Beast* removed them in accord with its website policies.

34. Undeterred, on or around October 27, 2011, Samia El-Moslimany re-posted all the defamatory commentary from the *Daily Beast* website on her own Facebook page, a posting that Samia El-Moslimany maintains today. Exhibit 10. Samia El-Moslimany has also posted to her own "wall" on Facebook: "Samia El-Moslimany Hayat Sindi Daily Beast UNCENSORED COMMENTS https://www.facebook.com/media/set/?set=a.10150345180322991.349720.536247990&t

ype=1&l=661a4e56c4,which is the URL link to Exhibit 10. It is therefore clear that Samia El-Moslimany and her mother are the authors of these published statements.

35. Throughout the winter of 2011, Samia El-Moslimany continued to send hateful, vindictive emails to Ms. Sindi directly, adopting some of the same pseudonyms that she and her mother had used in the *Daily Beast* comments. For example, on December 17, 2011 at 6:41 AM, Samia El-Moslimany sent an email from "munafikasindi@yahoo.com," in which she vowed that Ms. Sindi would "rue the day" that she ever encountered Samia El-Moslimany, and she began to refer to Ms. Sindi as "Sin."

36. Samia El-Moslimany also announced her malicious intent to ruin Ms. Sindi, to damage permanently her reputation and career, and to pursue this defamatory campaign without end, saying "Don't think that … I will now go away … I am here forever." Samia El-Moslimany then falsely represented her defamatory campaign as based upon "the truth" and unambiguously expressed the intent to interfere with Ms. Sindi's "business associates" and, in short, anyone who had or has anything to do with Ms. Sindi.

37. Ms. Sindi received malicious electronic communications either from Samia or Ann El-Moslimany on a routine basis during 2011 and 2012, which were designed and intended to harass, intimidate, and inflict emotional distress upon Ms. Sindi. By way of an additional example only, on or around December 21, 2011, Samia El-Moslimany began to bombard Ms. Sindi with extremely long text messages, one of which stated:

> Obviously you are a liar of pathological proportions to the extent that even you believe your own petty lies. However, soon very soon, you will be exposed for the hypocrite & fraud that you are … how does it feel to have so screwed up your life? And you thought you were untouchable...nope! Nighty-night!"

38. Samia El-Moslimany has done everything in her power to make good on her vicious threats. Not content with jealous personal attacks on Ms. Sindi for some kind of perceived personal relationship with Mr. Dehlawi, Samia El-Moslimany repeatedly posted statements on Facebook that she knew to be false, or, through the exercise of reasonable diligence would have known to be untrue.   By way of example only, Ms. El-Moslimany's false statements in this regard include, without limitation, published statements that Ms. Sindi's "achievements are not her own or even fabrications" (Facebook posting of January 24, 2012).  Samia El-Moslimany has even gone so far as to state that her falsehoods are based upon "reliable sources" and "hundreds" of pages of documentary evidence.  But it is Samia and Ann El-Moslimany who have fabricated malicious untruths, and they have no source of information.  They have merely made these additional false statements to lend credibility to their malicious acts of slander and libel.

39. Not only do the El-Moslimanys lack any "reliable sources" for their statements about Ms. Sindi; plentiful information that is publicly available proves that their statements are fabrications.  By way of example only, contrary to the Defendants' statements that Ms. Sindi has misrepresented her status as the inventor of various patents, public records show that Ms. Sindi has patented the technology that forms the basis for DFA and Sonoptix, either as sole inventor or as co-inventor with others.  See Exhibits 4-7.  Her work and accomplishments have not only been endorsed by the most prestigious academic research universities in the world (Harvard, M.I.T., Cambridge); she has also received numerous awards for her work and for her visionary ideas.

40. For example, in support of Ms. Sindi's nomination for the L'Oreal UNESCO Award for Women in Science in 2013, Dr. Adrian Stevenson, Senior Research Associate at the Cambridge Institute of Biotechnology wrote, "Over my experience in academia and business, I have not met anyone comparable." A true and accurate copy of Dr. Stevenson's letter is attached to this Complaint as Exhibit 11.

41. Dr. Stevenson mentioned not only Ms. Sindi's credentials, but also the quality of her work in depth. He described her research as "ground breaking" for her Ph.D. and highlighted her publication in Analytical Chemistry, a "top ranking research journal," which is publically available. Id. Ms. Sindi was first author on the article A Strategy for Chemical Sensing Based on Frequency Tunable Acoustic Devices, 73 Anal. Chem., 1577 (2001). Dr. Stevenson said that Ms. Sindi's work for DFA "captures a way of doing science that targets a social problem to be solved." Id. He also stated that her patents, which have been assigned to her company Sonoptix, LLC, are listed by "patentgenius," the leading hub for public patent information used by patent attorneys, companies, investors, scientists, and engineers. Id. In Mr. Stevenson's words, these inventions and Ms. Sindi's contributions to others with her colleagues "give a mind-blowing new technology for the 21st century." Id.

42. Thus Samia and Ann El-Moslimany have set forth their campaign of false and malicious defamation contrary to every truth known about Ms. Sindi, much of which is readily accessible in the public record just as Dr. Stevenson notes in his letter to UNESCO.

43. Samia El-Moslimany has also begun to refer to her campaign of slander, libel, and defamation as "operation arabian [sic.] EXPOSURE" (emp. in orig., Facebook post of December 16, 2012), further evincing her malicious intent. Samia El-Moslimany also

13

stated on Facebook, "Nothing I am posting is not true.  I have documents that I can post to prove my statements" (Facebook posting of February 15, 2012).  In fact, the El-Moslimanys have no documents to "prove [their] statements" because their statements are based upon malicious fabrications.  The Defendants' false statements have been repeatedly published to third parties in writing, orally, and through electronic means, particularly via the Internet.

44. Not content with Internet venues, Samia El-Moslimany and her mother Ann El-Moslimany took their campaign to a new level by appearing in person to slander Ms. Sindi's reputation in public at conferences and business events at which Ms. Sindi spoke and solicited investors.  One example was the Conference of the Council for the Advancement of Muslim Professionals ("CAMP") held at the Wyndham Princeton Forrestal Hotel held in Princeton, New Jersey on or around April 4, 2012.

45. Samia and Ann El-Moslimany arranged to stay at the Wyndham Princeton Forrestal Hotel and Conference Center and attempted to enroll in the conference.  Alerted to Samia El-Moslimany's attempts to defame and slander Ms. Sindi, the conference organizers withdrew Samia El-Moslimany's registration, but Samia El-Moslimany and Ann El-Moslimany attended nonetheless in order to distribute leaflets to participants of the conference.  Enlisting the aid of unknown associates, the El-Moslimanys spread out three large banners with false and defamatory statements about Ms. Sindi, one so large that it had to be held by two individuals.  The banners stated, in essence, that Ms. Sindi was a fraud and directed onlookers to their website-blog, TrueHayatSindi.BlogSpot.com.  The El-Moslimanys erected one banner at the Wyndham Hotel car park entrance, another at the entrance to the conference hall, and another on the grass in front of the hotel.  When

14

Ann El-Moslimany attempted to disrupt activities inside the conference hall, she was twice escorted from the building, which she tried to evade by hiding in the women's bathroom.

46. That day, Samia El-Moslimany congratulated herself for her defamatory "operation arabian [sic.] EXPOSURE" by posting to Facebook at 8:28 PM, "mission accomplished alHamdullillah!"

47. On or around April 21, 2012, Samia El-Moslimany also wrote to the organizers of CAMP to impugn Ms. Sindi's professional qualifications and reputation:

> … her [Ms. Sindi's] personal, professional and academic resume calls into question her credentials as a scholar and a professional. What might seem as trivial dishonesty or vanity about her age, has given her opportunities that should have gone to those who actually fit the "youth" criteria for specific awards. For example, at 40 years of age, Sindi was awarded the 2007 Arab-American Science and Technology Young Professional Award: which "recognizes the early career achievements of a young Arab or Arab-American scientist or technologist." At 42 years Sindi was granted the 2009 PopTech Social Innovation Fellowship: for "high potential young leaders." And at 43 years she was awarded a 2011 National Geographic Emerging Scholar Award: which "supports uniquely gifted and inspiring young adventurers, scientists, photographers, and storytellers—explorers who are already making a difference early in their careers." By misrepresenting her age, Sindi robbed opportunities for recognition, public relations support, funding opportunities and career advancement, from the very youth she proclaims to support with her new institute, http://i2institute.org. Again, not the actions of a true role model, not the least a Muslim one.
>
> Secondly, professionally, Dr. Sindi promotes herself as one of the "one of the [sic.] world's leading biotechnologists" and her company Sonoptix Technology, "a UK company established with Saudi seed money" as developing clinical diagnostics tools for the detection of cancer. According to online sources, Dr. Sindi is the only director, and perhaps only employee of Sonoptix, the company is housed in a storefront in Cambridge, UK, and has not ever produced, marketed or sold any product. For the records available online (http://company-director-check.co.uk/director/909517346) Sonoptix has a total capital of £1000 UK, and has had no financial activity whatsoever since 2007. These are just a couple of the inconsistencies in Dr. Sindi's professional resume.

15

48. Each of these statements is false and knowingly so.  Once again, Samia El-Moslimany demonstrated an apparent fixation on Ms. Sindi's age, but she went far beyond this, suggesting that Ms. Sindi's entire career is fraudulent and that Ms. Sindi has "robbed opportunities for recognition, public relations support, funding opportunities and career advancement" from other scientists and entrepreneurs.  Samia El-Moslimany also accused Ms. Sindi of operating Sonoptix as a fraudulent corporation, although Sonoptix held an initial public offering in May 2012 and has currently raised 20,000,000 in capital.

49. On April 4, 2012, Samia El-Moslimany announced on her Facebook page that she was in or around Needham, Massachusetts.  At that same time, Ms. Sindi began receiving numerous harassing telephone calls from her.  Ms. Sindi also noticed that Samia El-Moslimany was literally following her around and speaking directly to neighbors near her residence.  In these interactions, Ms. El-Moslimany defamed Ms. Sindi by perpetuating the same falsehoods she had published in the past by falsely contending that Ms. Sindi was a fraud, among other slanderous statements.  When Ms. Sindi was walking at night, a Somali man emerged from a shop, recognized her, and stopped her on the street in order to warn her in a threatening voice, "You better be careful sister!" clearly indicating that Samia El-Moslimany had interacted with him and spread vicious lies about Ms. Sindi.  Because of Samia El-Moslimany's activities in this regard, Ms. Sindi no longer feels safe, even in her very neighborhood.

50. Uninformed individuals who read, hear, or receive Samia El-Moslimany's various defamatory publications have frequently exhibited violent and/or abusive responses, demonstrating that they believe the Defendants' false and malicious statements.  One commenter to Samia El Moslimany's Facebook page stated on February 16, 2012 that

Ms. Sindi was a "Wench"; another said on February 23, 2012, that she "could find herself in the street being stoned or jailed…" A commenter on Samia El-Moslimany's blog, which she maintains at TrueHayatSindi.BlogSpot.com, posted on March 7, 2012, "Haram! InshaAllah justice will be served!"

51. These and other false statements have irreparably damaged Ms. Sindi's reputation and have justifiably caused her to fear for her physical safety as well as caused her extreme emotional duress.

52. Between April 27 – 29, 2012 in Washington, D.C., Ms. Sindi attended the Nifty Fifty Conference, which promotes interest in science and engineering among middle- and high-school students as part of the U.S.A. Science and Engineering Festival. Ms. Sindi was selected by the Festival's organizers from hundreds of applicants for her ability to convey the importance of science to young audiences and to the non-scientific public. Ms. Sindi participated along with ninety-nine other scientists, engineers, high-technology entrepreneurs and financiers, policy makers, actors, journalists, educators, researchers, explorers, storm chasers, video game developers, astronauts, and brain surgeons, among others – all according to the Festival's press release.

53. Samia El-Moslimany attended this event and once again distributed leaflets to attendees. This time, the leaflets bore a caricature of Ms. Sindi beside the statement,

> **A Nifty-Fifty Muslim Woman Scientist?**
>
> She's building, not breaking barriers for my Muslim Daughter!
>
> **LOOK for the TRUTH!**
>
> True**Hayat**Sindi.BlogSpot.com

Exhibit 12.

54. The leaflet referred individuals to a blog maintained by Samia El-Moslimany, located on the Internet at the URL address given on the flyer, truehayatsindi.blogspot.com. Defendants use this blog to further perpetuate their false and malicious campaign of defamation against Ms. Sindi. Although Defendants maintain the blog under the pseudonym "Truth Teller," it is perfectly clear who the "anonymous" bloggers are from the statement: "I am an anonymous 3rd party that desires justice to be done and the truth to be told about Fuad Dahlawi [sic.] and Hayat Sindi."

55. The El-Moslimany's continue to post false statements on TrueHayatSindi.BlogSpot.com through today. In reality, virtually nothing set forth on the TrueHayatSindi blog is true and all of the postings are designed and intended to injure Ms. Sindi. To the extent that the so-called "TrueHayatSindiBlog" is not merely preoccupied with Samia El-Moslimany's averments as a jealous wife, the defamatory statements set forth on the website include, without limitation, re-posting the letter, verbatim, that Samia El-Moslimany sent to the organizers of CAMP on April 21, 2012 (referenced in ¶ 47 above). A true and accurate copy of all current postings of this blog as of the date of filing is attached as Exhibit 13.

56. In numerous email chains published to third parties, on Facebook, Internet postings, and in other media, Samia El-Moslimany and her mother Ann El-Moslimany have repeatedly set forth lies about Ms. Sindi.

57. For example, in and around December 22, 2012, Ann El-Moslimany sent defamatory emails to the board members of the i2 Institute. The false and defamatory statements of fact which she sent in her message included the usual litany of slanderous, malicious

falsehoods that the El-Moslimany's had been propagating incessantly for over a year, stating, without limitation, that

  i.   Ms. Sindi is an "academic fraud";

 ii.   Ms. Sindi's Ph.D. research and dissertation were actually the work of Dr. Adrian Stevenson;

iii.   although Ms. Sindi was a visiting Scholar at Harvard University in the laboratory of Professor George Whitesides, she did not teach, do any research of substance, work in his laboratory, or pursue any meaningful work;

 iv.   Ms. Sindi holds herself out as younger than she is so as to qualify for awards for "young" professionals;

  v.   Ms. Sindi is not the actual inventor of technology that she claims to have invented;

 vi.   that Sonoptix is a "fraudulent company"; and

vii.   Ms. Sindi claims association with companies with which she has no association, including Nanoterra, among others.

A true and accurate copy of this email, as forwarded to an associate of the i2 Institute, Daniel Camara, is attached as Exhibit 14.

58. This is yet another example of the El-Moslimany's relentless efforts to undermine Ms. Sindi's reputation as a professional scientist and entrepreneur, although they are fully aware that Ms. Sindi has founded or co-founded three businesses and/or non-profit companies, won awards from M.I.T. and Harvard Business School for doing so, and served as vice chairman of Nanoterra.

59. The El-Molsminays also persistently attack Ms. Sindi for allegedly lying to say she is younger than she is.  But this is, in fact, blatantly false and known to be so by the El-Moslimanys because the question of Ms. Sindi's age is another remarkable facet of her life story.

19

60. Ms. Sindi's United States resident Visa lists her birthdate as November 6, 1967. This is the date that Ms. Sindi always gives when asked for official purposes, but the precise date of her birth is not known to her.

61. This is because it was and still is common in the society into which Ms. Sindi was born for parents to present their children as *__older__* than they actually are. Her parents, though of extremely modest means, wanted their daughter to advance and become an educated woman, despite the fact that roughly 98% of Saudi women were illiterate at the time of Ms. Sindi's birth. It was and is usual and customary for Saudi Arabian parents with aspirations to hold their children out *__as older__* in an effort to open doors to a desirable school or to a desirable job.

62. When Ms. Sindi was a young girl her father wished for her to be admitted to School Number Eight in Riyadh. However, the minimum age of admittance for this school was nine years old, but she was only approximately five years old. She was tall as a little girl, however, and School Number Eight admitted her. At no point, however, did Ms. Sindi's mother or father or Ms. Sindi herself ever represent that she was younger than she was because that would risk cutting her off from opportunities.

63. Spreading the rumor that Ms. Sindi attempts to hold herself out as younger than she is, when, in fact, the circumstances of her life have required her to hold herself out as *__older__* is another example of the kind of base, malicious falsehoods spread by the El-Moslimanys.

c.  **Harm Suffered by Hayat Sindi**

64. The damage suffered to date by Ms. Sindi arising from the Defendants' relentless campaign is nearly incalculable given the length, scope, and breadth of the misconduct. There are however examples of direct and tangible impact upon Ms. Sindi caused by

20

Defendants' tortious misconduct.  By way of example only, in and around the early part of 2011, Ms. Sindi entered into a contract with Kube Publishing, Ltd. for the rights to publish a biography of her life's story.

65. On July 3, 2012, specifically referring to defamatory statements made by Samia El-Moslimany and Ann El-Moslimany, Kube Publishing, Ltd. informed Ms. Sindi that it was no longer planning to release the book and told her that the press was "waiting for some answers."

66. Samia El-Moslimany and Ann El-Moslimany's malicious campaign has also interfered with Ms. Sindi's businesses and charitable work.

67. Given Ms. Sindi's duties as a board member of the DFA as well as founder and C.E.O. of the i2 Institute and Sonoptix, she is constantly in contact with investors, venture capitalists, and philanthropic institutions.  In short, one of Ms. Sindi's core responsibilities is to raise money, an activity that depends crucially upon her reputation as an entrepreneur and scientist as well as a woman of character.

68. Because of what Samia and Ann El-Moslimany have charactized as "operation arabian [sic.] EXPOSURE," investors have told Ms. Sindi that they will not invest money in the i2 Institute, among other projects.  Even investors who have continued to support Ms. Sindi's various enterprises have demanded an explanation for the vicious, false statements published and spread by the El-Moslimanys.  Ms. Sindi has had to expend great effort to convince her investors that the defamatory statements published by the El-Moslimany's are not true.

69. By way of one example only, the defamatory messages propagated by Samia and Ann El-Moslimany were also sent to i2 Institute board members in the guise of an email from the

famous Egyptian Muslim activist and television preacher Amr Khaled, although he is a personal friend of Ms. Sindi's, knows her character, and would never send such a fabricated lie. The email sent to a board member of the i2 Institute announced, "There are allegations about Dr. Sindi plagiarizing her PhD thesis by getting a postdoc to write it on her behalf while she was at Cambridge, UK." A true and accurate copy of this fraudulent email, which the Defendants were behind, is attached as Exhibit 15.

70. Although Ms. Sindi, her co-workers, and associates of the i2 Institute did everything in their power to counter Samia and Ann El-Moslimany's vicious, slanderous libel with the truth, they could not protect the i2 Institute when investors and speakers began to withdraw their participation. An example is, Fadi Ghandor; C.E.O. of the global logistics and delivery corporation Aramex, who refused to either fund the i2 Institute or attend a planned donors event that he had agreed to chair before receiving misinformation spread maliciously by the El-Moslimany's. See Exhibit 16. The loss of funds for the i2 Institutes is nearly incalculable. The planned event had to be canceled after Mr. Fadi withdrew. Ms. Sindi had targeted raising $10,000,000, but the El-Moslimany's interference prevented her from raising a single dollar.

71. Ms. Sindi has also been harmed among other patrons the i2 Institute in other ways. She carefully cultivated a business relationship to the MIT Medial Lab, and it took her the better part of a year to convince the Media Lab to accept fellows at MIT from the i2 Institute.

72. Samia and Ann El-Molsimany interfered with this relationship by sending the Media Lab defamatory emails. Thereafter, representatives of the Media Lab began to cancel meetings with Ms. Sindi, and Ms. Sindi learned that representatives of the Media Lab

have been forwarding the El-Moslminays' libelous emails to investors and influential business associates, in particular to Fadi Ghandor, who canceled his cooperation with Ms. Sindi and his fundraising efforts on behalf of the i2 Institute.

73. The need to constantly counter the El-Moslimanys' incessant campaign of defamation has caused Ms. Sindi to suffer a degradation in her physical condition and mental health because she lives in constant fear and anxiety that the El-Moslimanys themselves or someone they may incite will take some form of reprisal action against her or mount some kind of violent attack upon her person.

## Count I
## Defamation, Libel, and Slander

74. Ms. Sindi sets forth here all foregoing paragraphs as if fully stated herein.

75. Samia El-Moslimany and Ann El-Moslimany have engaged in a campaign of libel and slander, which they have styled "operation arabian [sic.] EXPOSURE," in which they have repeatedly published statements on the internet in the comments sections of media articles, on Facebook, and on the blog TrueHayatSindi.BlogSpot.com, among other venues.

76. Samia El-Moslimany and Ann El-Moslimany's campaign of slander has involved their repeated appearance at venues in which Ms. Sindi was engaged to speak to investors, scientists, engineers, or students and distributed leaflets with caricatures of Ms. Sindi that direct recipients to go to the blog TrueHayatSindi.BlogSpot.com.

77. Even when media such as the *Daily Beast* have taken down the Moslimanys defamatory publications, Samia El-Moslimany has republished the offensive statements on her own Facebook page or on her blog.

23

78. Samia El-Moslimany and Ann El-Moslimany have also published each of the false statements identified above to others in person, over email, and via other electronic means, and through writings such as flyers.

79. Samia El-Moslimany and Ann El-Moslimany's statements were false and were made negligently, intentionally, and/or with reckless disregard for the truth or falsity of such statements.

80. The El-Moslimany's published, false statements of and concerning Ms. Sindi have held her up to scorn, hatred, ridicule, and contempt in the minds of recipients and readers of the statements including but not limited to *Washington Post* readers, the *Daily Beast* readers as well as those who have attended the CAMP conference, the Nifty-Fifty Conference of the U.S.A. Science and Engineering Festival, and other venues where Ms. Sindi appeared to speak and recruit investors for the i2 Institute.

81. As evinced by her own direct emails to Ms. Sindi and her related self-congratulatory comments,, Samia El-Moslimany has acted negligently and/or with actual malice; Samia Moslimany has acted with reckless and wonton disregard of the truth; and she has acted with the intent to ruin Ms. Sindi's reputation.

82. The defamatory statements published by Samia El-Moslimany and Ann El-Moslimany have damaged Ms. Sindi both in her personal and professional reputation and economically. Among other things, Ms. Sindi has lost business opportunities with investors and with her publishing house because of the El-Moslimanys. Ms. Sindi has suffered damage to her reputation generally as well as other economic damage and has suffered emotional distress arising from the defamatory conduct.

## Count II
### Tortious Interference with Contractual Relationships

83. Ms. Sindi sets forth here all foregoing paragraphs as if fully stated herein.

84. Ms. Sindi had a contract with, without limitation, Kube Publishing, Ltd. which promised to publish a biography of her life story.

85. Ms. Sindi also has actual business relationships with her investors and other business associates with whom she has interacted.

86. Samia and Ann El-Moslimany knew of these business relationships and intentionally published libelous statements that they knew or should have known would induce Kube Publishing, Ltd., among other parties, to refuse to perform its contractual promise.

87. Samia and Ann El-Moslimany were motivated by malice, with the intent, as they expressed it, to make Ms. Sindi "rue the day" she ever met Samia El-Moslimany. Defendants have expressed the intent to ruin Ms. Sindi's reputation as a business woman, entrepreneur, and scientist.

88. Samia and Ann El-Moslimany have used the improper means of slander, libel, and defamation.

89. Ms. Sindi suffered damages, without limitation, in the delay and cancelation of her book contract.

## Count III
### Tortious Interference with Prospective Business Relationships

90. Ms. Sindi sets forth here all foregoing paragraphs as if fully stated herein.

91. Ms. Sindi has extensive relationships with investors and philanthropists who invest in her many enterprises, including, without limitation, DFA, the i2 Institute, and Sonoptix.  She

had the strong probability of future economic benefit from these relationships in the form of direct investment in her enterprises or donations to her non-profit companies.

92. Ms. Sindi has extensive relationships with individuals in the academic, scientific, and business community.

93. Samia and Ann El-Moslimany knew of Ms. Sindi's extensive contacts with these individuals. Defendants also knew that their intentionally published libelous statements would discourage these individuals from associating with, donating to, investing in, or otherwise engaging in business, professional, academic, or scientific endeavors with her.

94. Samia and Ann El-Moslimany were motivated by malice, with the intent, as they expressed it, to make Ms. Sindi "rue the day" she ever met Samia El-Moslimany. Defendants have expressed their intent to ruin her reputation as a business woman, entrepreneur, and scientist.

95. Samia and Ann El-Moslimany have used the improper means of slander, libel, and defamation.

96. Ms. Sindi suffered damages, without limitation, in the delay or cancelation of investors who refused to conduct business with her or her business entities because of the defamation campaign of Samia and Ann El-Moslimany.

## Count IV
## Intentional Infliction of Emotional Distress

97. Ms. Sindi sets forth here all foregoing paragraphs as if fully stated herein.

98. By publishing malicious statements in multiple forums, Samia and Ann El-Moslimany intended to inflict emotional distress upon Ms. Sindi.